**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

NOV 27 2013

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JOSE MENJIVAR-MELGAR, | No. 09-73498 |
| Petitioner, | Agency No. A098-408-561 |
| v. | |
| ERIC H. HOLDER, JR., Attorney General, | MEMORANDUM* |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted November 5, 2013
San Francisco, California

Before: TASHIMA, W. FLETCHER, and NGUYEN, Circuit Judges.

Petitioner Jose Fernando Menjivar-Melgar ("Menjivar-Melgar") petitions for

review of a decision of the Board of Immigration Appeals ("BIA") denying his

application for asylum, withholding of removal, and protection under the

Convention Against Torture ("CAT"). We have jurisdiction pursuant to 8 U.S.C. §

1252. We deny the petition.

_____

\* This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

1. Menjivar-Melgar's application for asylum was not timely because it was filed more than one year after his arrival in the United States. *See* 8 U.S.C. § 1158(a)(2)(B). Failure to comply with the one-year requirement may be excused where the petitioner demonstrates "extraordinary circumstances relating to the delay" or "the existence of changed circumstances which materially affect the applicant's eligibility for asylum." *Id*. § 1158(a)(2)(D). Ineffective assistance of counsel may, in certain situations, constitute "extraordinary circumstances." *See* 8 C.F.R. § 1208.4(a)(5)(iii).

Menjivar-Melgar argues that the BIA failed to consider the ineffective assistance of counsel he received when it declined to excuse his failure to comply with the one-year bar. He further argues that the Immigration Judge ("IJ") failed to articulate a sufficient legal basis for rejecting his claim of changed circumstances based on his new status as a step-father of U.S. citizen children. We have jurisdiction to consider Menjivar-Melgar's arguments because they turn on undisputed facts—namely, his failure to satisfy the factors from *Matter of Lozada*, 19 I. & N. Dec. 637 (B.I.A. 1988), codified at 8 C.F.R. § 1208.4(a)(5)(iii)(A)–(C), and his new parental role. *See Sumolang v. Holder*, 723 F.3d 1080, 1083 (9th Cir. 2013) (holding that this court had jurisdiction to review the BIA's determination regarding the changed-circumstances exception because the ruling turned on

undisputed facts); *Tamang v. Holder*, 598 F.3d 1083, 1089 (9th Cir. 2010) (holding that this court had jurisdiction to review the petitioner's claim of ineffective assistance of counsel because the claim involved a mixed question of law and fact and the relevant facts were undisputed).[1]

Substantial evidence supports the BIA's rejection of these two claims. On his claim of ineffective assistance of counsel, Menjivar-Melgar's failure to satisfy the *Matter of Lozada* factors rendered it nearly "impossible to determine whether [his] ineffective assistance of counsel claim [had] merit." *Tamang*, 598 F.3d at 1090. Moreover, Menjivar-Melgar suggested during his removal proceedings that he failed to file for asylum within the one-year deadline because he believed that "no one would listen to [him]," and thus did not pursue asylum "until [he] got arrested." These statements belie his claim of "extraordinary circumstances relating to [his] delay." *See* 8 U.S.C. § 1158(a)(2)(D). On his claim of changed circumstances, even if the IJ failed to identify specifically a case supporting his

---

[1] We find that Menjivar-Melgar sufficiently exhausted his claim of ineffective assistance of counsel before the BIA. Menjivar-Melgar's brief to the BIA specifically discussed his alleged consultation with an attorney and a community-based legal resource center, and, in both instances, he was given no information regarding asylum. *See Figueroa v. Mukasey*, 543 F.3d 487, 492 (9th Cir. 2008) (noting that exhaustion only requires a petitioner to put the BIA on notice as to specific issues such that the agency had an opportunity to pass on those issues).

conclusion that the birth of a child constitutes merely a change in *personal* circumstances, the IJ's judgment nonetheless finds support in our case law. *See He v. Gonzales*, 501 F.3d 1128, 1132 (9th Cir. 2007) (holding that "the birth of children outside the country of origin is a change in personal circumstances that is not sufficient to establish changed circumstances in the country of origin" for purposes of excusing a failure to file a motion to reopen within the required ninety-day deadline).

2.   The record does not compel the conclusion that Menjivar-Melgar is entitled to withholding of removal. To qualify for withholding of removal, Menjivar-Melgar must show that there is a clear probability that he will be persecuted upon removal to El Salvador "on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 1208.16(b); *see also El Himri v. Ashcroft*, 378 F.3d 932, 937 (9th Cir. 2004). Substantial evidence supports the BIA's finding that the incidents described by Menjivar-Melgar did not rise to the level of past persecution. Menjivar-Melgar discussed how his family members in El Salvador were threatened, but none of them were ever physically harmed. *See Lim v. INS*, 224 F.3d 929, 936 (9th Cir. 2000) ("Our court generally treats unfulfilled threats, without more, as within that category of conduct indicative of a danger of future persecution, rather than as past

persecution itself."); *Hoxha v. Ashcroft*, 319 F.3d 1179, 1181–82 (9th Cir. 2003) (unfulfilled threats made to an ethnic Albanian by various Serbs and a single, possibly unrelated incident of beating did not amount to past persecution).

Further, the BIA did not err in finding that Menjivar-Melgar's proposed group of deportees from the United States perceived to be wealthy was not a cognizable social group because it lacked social visibility. Menjivar-Melgar presented no evidence that members of the society or gangs in El Salvador perceive or recognize this population as a social group. *See Henriquez-Rivas v. Holder*, 707 F.3d 1081, 1088–89 (9th Cir. 2013) (en banc) (explaining that "social visibility" requires that the shared characteristic be recognizable by members of the community or that members of the group be perceived as a group by society).

Even assuming that Menjivar-Melgar's alternative proposed group of "family related to former military members" is a cognizable social group, the continuing safety of similarly-situated members of Menjivar-Melgar's family who have remained in El Salvador substantially undercuts his claim that he will likely face persecution upon removal. *See Santos-Lemus v. Mukasey*, 542 F.3d 738, 743–44 (9th Cir. 2008), *overruled on other grounds by Henriquez-Rivas*, 707 F.3d at 1093. Dr. Cordoba's expert testimony regarding "deferred vengeance" does not compel a contrary conclusion. *See INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1

(1992) ("To reverse the BIA['s] finding we must find that the evidence not only *supports* that conclusion, but *compels* it . . . ." (emphasis in original)).

3. The record does not compel the conclusion that Menjivar-Melgar is entitled to relief under CAT. Dr. Cordova's report regarding the inadequacy of the Salvadoran judicial system and corruption within the National Civilian Police does not compel the conclusion that a Salvadoran government official or person acting in an official capacity would acquiesce in the torture of Menjivar-Melgar or his family at the hands of former guerillas or gang members. *See Cole v. Holder*, 659 F.3d 762, 771 (9th Cir. 2011) (explaining that "acquiescence" requires that the government be aware of the torture but continues to be willfully blind to it or simply stands by due to its inability or unwillingness to oppose it).

**PETITION DENIED.**